GUNDERSON LAW FIRM
Austin K. Sweet, Esq.
Nevada State Bar No. 11725
asweet@gundersonlaw.com
3895 Warren Way
Reno, Nevada 89509
Telephone: 775.829.1222
Facsimile: 775.829.1226
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HARRY GINGOLD and MONIQUE GINGOLD, husband and wife, NAHAL KEDUMIM, LLC, a New York limited liability company, their successors and assignees, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>ITRONICS, INC., a Delaware limited liability company; JOHN W. WHITNEY, individually; WHITNEY & WHITNEY, a Nevada Corporation; NEVADA HYDROMETALLURGICAL PROJECT, a Nevada general partnership; AMERICAN GOLD & SILVER LIMITED, a Nevada limited partnership; ITRONICS METALLURGICAL, INC., a Nevada corporation; AMERICAN HYDROMET, a Nevada general partnership; AURIC GOLD & MINERALS, INC. d/b/a AURIC GOLD & SILVER, a Nevada corporation; DOES 1-10, and; their successors and assignees, inclusive,<br><br>Defendants.<br>_____/ | Case No.:<br><br><br><br>**COMPLAINT**<br><br>**[Jury Demanded]** |

The Plaintiffs, HARRY GINGOLD and MONIQUE GINGOLD, husband and wife, and NAHAL KEDUMIM, LLC, a New York limited liability company, their successors and assignees, inclusive (collectively referred to as "Plaintiffs") by and through their counsel of record, Austin K. Sweet, Esq. of Gunderson Law Firm, allege and complain as follows:

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

-1-

## PARTIES AND JURISDICTION

1. Plaintiffs are judgment creditors pursuant to a judgment entered in US District Court District of Nevada Case No. 3:19-cv-00532 entered on February 17, 2022, in favor of Plaintiffs and against Itronics, Inc. and its successors and assigns, in the amount of $99,759.06 (which includes the principal judgment and subsequent orders granting $16,970 attorney's fees and $627.51 costs, plus interest). The Writ of Execution was filed on May 1, 2023, and, at the time of filing, the amount actually due was **$101,301.80** (hereinafter "the Judgment").

2. Itronics, Inc. claims insolvency and inability to pay the Judgment.

3. However, the debtor's exam, specifically the deposition of Itronics' Fed. R. Civ. P. (30(b)(6) designee, Michael Horsley, revealed that Itronics, Inc. did have cash assets of at least $135,000, which it received after the Writ of Execution was filed, but which Itronics, Inc. fraudulently transferred to its subsidiary companies and/or alter egos, such that this Court should issue a judgment against all Defendants to satisfy the $101,301.80 debt, plus interest.

4. Plaintiffs Harry Gingold and Monque Gingold, husband and wife, (together "the Gingolds") are, and at all times relevant hereto were, citizens of the State of West Virginia, residing in West Virginia.

5. Plaintiff, Nehal Kedumim, LLC, is a New York limited liability company with a principal place of business in Morgantown, West Virginia.

6. Defendant ITRONICS, INC. ("Itronics, Inc"). is a citizen of Nevada, with its incorporation in Delaware, but its principal place of business in Reno, Nevada.

7. Defendant JOHN W. WHITNEY ("Whitney") is, and at all times relevant hereto was, a citizen of Nevada.

8. Defendant WHITNEY AND WHITNEY, INC. ("Whitney & Whitney"), a Nevada corporation, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

9. Defendant NEVADA HYDROMETALLURGICAL PROJECT ("NHP"), a Nevada general partnership, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

10. Defendant AMERICAN GOLD AND SILVER LIMITED ("American Gold"), a Nevada limited partnership, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

11. Defendant ITRONICS METALLURGICAL, INC. ("IMI"), a Nevada corporation, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

12. Defendant AMERICAN HYDROMET ("AH"), a Nevada general partnership, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

13. Defendant AURIC GOLD & MINERALS, INC. d/b/a AURIC GOLD & SILVER ("Auric"), a Nevada corporation, is a citizen of Nevada, with both its state of incorporation and a principal place of business in Nevada.

14. Defendants Whitney & Whitney, NHP, American Gold, IMI, AH and Auric are collectively referred to throughout this Complaint as "the Subsidiaries."

15. The true names and capacities of the defendants named as Does 1 through 10 are unknown to Plaintiffs, who therefore sue defendants by fictitious names. On information and belief, Does 1 through 10 are and were agents, employees, parents, or subsidiaries of the other defendants and are legally responsible in some manner for the events and happenings alleges herein. Plaintiff will seek to amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

16. At all relevant times, each of the Defendants were acting as an agent, servant, employee, or representative of Itronics, Inc., and in doing so acting as alleged in this Complaint, acted within the course and scope of their agency, service, employment, or joint venture.

17. Venue is properly in this Court pursuant to 28 U.S.C. § 1391(a) in the jurisdiction where Defendants reside.

18. This Court has diversity jurisdiction under 28 U.S.C. § 1332 where all Plaintiffs are citizens of West Virginia and New York or are incorporated and have their principal place of businesses in West Virginia and New York, and all Defendants are citizens of Nevada or are incorporated in or have their principal place of business in Nevada and the amount in controversy exceeds $75,000.

///

## FACTUAL ALLEGATIONS

19. On February 17, 2022, the Judgment was entered in favor of Plaintiffs and against Itronics, Inc. and its successors and assigns, in the amount of $99,759.06.

20. Itronics, Inc., has made no payments in full or partial satisfaction of the Judgment and the Plaintiffs commenced judgement collection efforts.

21. After filing the Writ of Execution, and pursuant to Fed. R. Civ. P. 30 and 69, Plaintiffs noticed a debtor's exam for Itronics, Inc.

22. On September 28, 2023, Plaintiffs deposed Itronics Inc.'s Fed. R. Civ. P. (30(b)(6) designee, its controller, Michael Horsley (Horsley).

23. Horsley testified that his job duties at Itronics, Inc. include preparing financial statements, accounts payable, preparing checks and doing the payroll.

24. Horsley then testified that Itronics, Inc. does not have payroll and a minimal number of checks.

25. Horsley testified there are various entities owned by Itronics, Inc. for which he has job duties, as follows:

   a. Whitney & Whitney, Inc.
   b. Itronics Metallurgical, Inc.
   c. American Hydromet
   d. Auric Gold and Silver

26. Horsley testified that Whitney & Whitney Inc. and Itronics Metallurgical Inc. "are the primary operating subsidiaries" of Itronics, Inc.

27. Horsley testified that Whitney &Whitney, Inc., Itronics Metallurgical, Inc. ("IMI"), American Hydromet and Auric are under the larger Itronics, Inc. parent company. Specifically, he stated, "[t]hey're not all 100 percent owned, but they're all under the umbrella."

28. Horsley confirmed he has the same controller role at all subsidiaries.

29. Horsley testified that Itronics, Inc., uses an American Hyrdromet bank account as a "payroll account" for Itronics, Inc., and all its subsidiaries. Horsley testified that this payroll account is "just a bank account that's in American Hydromet and then we pay payroll [for all companies] out

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-4-

of there."

30. Horsley testified that American Hydromet does not have its own employees, so its "payroll account" is used to pay employees of Itronics, Inc., IMI, Whitney and Whitney, and Itronics California. Horsley testified that when Itronics, Inc. was filing as public, he was responsible for their SEC filings, and he clarified that Itronics, Inc. is still publicly traded but has not made their SEC filings since the last refiling was done in September 2008.

31. Horsley testified that only Itronics, Inc. has SEC filing requirements and the Subsidiaries do not.

32. Horsley testified that Itronics, Inc. is required to file a 10K and 10Q, which requires an audit and contains financial statements, and 8Ks which the company does to report on current events. Itronics, Inc. is supposed to be filing these, but isn't.

33. A review of the public SEC filings, specifically the quarterly updates reporting financials and the money they were earning, reveals that Itronics, Inc. never disclosed its Subsidiaries.

34. Horsley testified that for Itronics, Inc., and each of the Subsidiaries, he reports to John Whitney, stating "John is in charge of all of them".

35. Horsley testified that the primary function of Whitney and Whitney is administrative support for IMI.

36. Horsley testified that an investor named "Nick" invested $100,000 in Itronics, Inc. in June 2023, and that Itronics, Inc., used those funds to fund operations for Itronics, Inc.'s Subsidiaries, primarily IMI, through the first part of September.

37. Horsley testified the $100,000 was deposited by "Nick" into Itronics, Inc.'s Bank of America bank account, but that Horsley immediately transferred the funds to the various Subsidiaries, with most of it going to Whitney and Whitney and into the "payroll account" held by American Hydromet to pay IMI's employees.

38. Horsley testified that the reason Itronics, Inc., immediately transferred the $100,000 investment to its Subsidiaries was to ensure that the Gingolds would not be able to execute against those funds in satisfaction of their Judgment.

///

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-5-

39. Horsley testified Itronics, Inc. also raised additional capital of $35,000, which they received within the last several weeks, from Sphere Management.

40. Horsley testified the $35,000 was deposited by Sphere Management into Itronics, Inc.'s Bank of America bank account, but that Horsley immediately transferred the funds to the various Subsidiaries, with most of it going to Whitney and Whitney and into the "payroll account" held by American Hydromet to pay IMI's employees.

41. Horsley testified that the reason Itronics, Inc., immediately transferred the $35,000 investment to its Subsidiaries was to ensure that the Gingolds would not be able to execute against those funds in satisfaction if their judgment.

42. Horsley testified that Itronics, Inc.'s only business location is 6490 South McCarran Blvd. (in Reno, NV).

43. Horsley testified that the business administration for the Subsidiaries is also conducted out of that office.

44. Horsley testified that Itronics, Inc. leases the office at 6490 South McCarran, but that Itronics, Inc. does not pay the $4,150 lease amount. Rather, Whitney and Whitney makes the lease payments for Itronics, Inc.

45. Horsley testified that Whitney and Whitney gets the money to pay the lease from a combination of sales from IMI, Whitney and Whitney sales, and the capital raises by Itronics, Inc., including the $135,000 investments received this year.

46. Horsley said part of the $100,000 capital from "Nick" and the $35,000 from Sphere Management could have gone to paying the rent, but he was not sure.

47. Horsley testified that Itronics, Inc.'s primary operating and revenue-producing Subsidiary is IMI, which owns and operates a manufacturing plant in Stead, Nevada at 14305 Mount McClellan Street.

48. Horsley testified that there are two debts on the property, a mortgage of $1.7 million with Fidelity Mortgage Lenders and a second debt of $580,00 owed to Catherine Frosi.

49. Horsley testified that the property appraised informally via a BPO at $4.7 million.

///

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-6-

50. Horsley testified that all IMI employees are paid through American Hydromet's "payroll account."

51. Horsley testified that Itronics. Inc. is solely run by John Whitney and has no employees.

52. Horsley confirmed he is actually an employee of Whitney and Whitney, even though he is the Itronics, Inc. controller and is paid by American Hydromet's "payroll account."

53. Horsley testified that John Whitney makes all decisions concerning transferring cash among Itronics, Inc., and its Subsidiaries, including dictating to which Subsidiaries' accounts to transfer investments into Itronics, Inc., and from which Subsidiaries' accounts to pay Itronics, Inc.'s bills.

54. Horsley testified that the reason Itronics, Inc., does not pay its own bills is to ensure that the Gingolds are not able to execute against Itronics, Inc.'s assets.

55. Horsley testified that Itronics, Inc. files federal taxes form 1120 consolidated with the Subsidiaries.

56. Horsley testified that Itronics, Inc. owns one hundred percent of IMI and Whitney and Whitney.

57. Horsley testified that Itronics, Inc., tracks all transfers between and among its Subsidiaries through "intercompany liability accounts."

58. Horsley testified that these "intercompany liability accounts" essentially amount to loans from one entity to another, but that these loans do not accrue interest, have no defined maturity dates, and are not memorialized through any written documents.

59. Horsley testified that, under these "intercompany liability accounts," each of the Subsidiaries owes money to Itronics, Inc.

60. Horsley testified affirming that Itronics, Inc. has the right to collect upon these "intercompany liability accounts."

61. Horsley testified that John Whitney decides which debts that Itronics, Inc., and each of its Subsidiaries will pay and which bank accounts from which Subsidiaries will be used to pay those debts.

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

-7-

62. Horsley testified that Whitney and Whitney, Inc. pays John Whitney's personal cell phone bill.

63. Horsley testified that Itronics, Inc. intentionally keeps its bank account low since entry of the Judgment.

64. In his deposition Horsley testified that IMI stopped producing silver because they lack the 'crucibles' or the X-Rays and photo liquids from which to extract the silver.  This directly contradicted the affirmative representations that Itronics, Inc., and John Whitney made to its investors, including Harry Gingold, about Itronics, Inc.'s silver production capabilities.

65. In his deposition Horsley testified that Itronics, Inc., has no operations and earns no revenue.  This directly contradicts the affirmative representations that Itronics, Inc., has made to its investors and the public at large.  For example, on July 12, 2022, Itronics, Inc. issued a press release representing that Itronics Inc. had revenue of $1,534,844 for the six months ending June 30, 2022.

66. Itronics, Inc. has yet to make any payment towards this judgment, claiming it has no assets with which the judgment could be paid.

67. Horsley's deposition testimony confirmed that Itronics, Inc. does have assets, but intentionally hides its assets, keeps its bank account low, and channels all cash and operations through its Subsidiaries specifically to avoid paying this Judgment.

68. Horsley's deposition testimony confirmed that John Whitney controls Itronics, Inc. and all Subsidiaries, and uses those entities to intentionally and deceptively hide Itronics, Inc.'s assets from its creditors.

69. Horsley's deposition testimony confirmed that Itronics, Inc. is a holding company for the Subsidiaries, and that Itronics, Inc. and its Subsidiaries file joint taxes, share bank accounts, pay bills and payroll, earn income, and raise capital interchangeably, as if they were all a single entity.

70. Plaintiffs have been forced to retain the services of an attorney and incur attorneys' fees and costs that are a direct and proximate cause of the Defendants' actions.

71. The underlying action was to recover a debt pursuant to three Promissory Notes ("the Notes"), with the Court entering judgment in favor of Plaintiffs for the full amount of the outstanding principal and interest owed under the Notes.

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

-8-

72. All three Notes contain an attorney's fees provision, which reads: "[i]n the event of a suit to enforce the terms of the Note, the undersigned agrees to pay such additional sums of attorney's fees and costs as the court determines. This note shall be governed by and construed in accordance with the laws of the State of Nevada."

73. Based on the attorney's fees provisions in the Notes, Defendants are contractually obligated to pay Plaintiffs' attorney's fees incurred in enforcing the terms of the Note, which includes collecting the judgment through this action.

## FIRST CLAIM FOR RELIEF

### (Avoidance of Transfer pursuant to NRS 112.210(1)(a) – All Defendants)

74. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as if fully set forth here.

75. Pursuant to NRS 112.210(1)(a), a creditor may obtain avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim.

76. By having the $100,000 cash transferred from Itronics, Inc. to the Subsidiaries, Defendants have entered into a fraudulent transfer in violation of NRS 112.180.

77. Specifically, by transferring the $100,000 from Itronics, Inc. to its Subsidiaries, Itronics, Inc. used the Subsidiaries as a vehicle to transfer Itronics, Inc. assets with actual intent to hinder, delay, or defraud Plaintiffs, and without receiving a reasonably equivalent value in exchange.

78. Evidence of Itronics Inc.'s actual intent to hinder, delay, or defraud Plaintiffs includes, but is not limited to: testimony by Horsley that Itronics, Inc. intentionally keeps its bank account low since this judgment was entered and instead makes all transactions through, and holds all assets in the name of, its Subsidiaries; the Subsidiaries and John Whitney being an insider of Itronics, Inc., as defined in NRS 112.150(7)(a)(2); Itronics, Inc.'s retaining possession or control of the property after the transfer; Itronics Inc. already being sued by Plaintiffs and having judgment entered against them at the time of the transfer; the transfer being of substantially all of Itronics, Inc.'s cash assets; on information and belief, Itronics, Inc. not receiving consideration from the Subsidiaries or John Whitney that was a reasonably equivalent value to the value of the assets transferred; and Itronics, Inc. being left allegedly insolvent after the transfer was made.

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-9-

79. By having the $100,000 transferred to its Subsidiaries rather than to Plaintiffs to satisfy the judgment, Defendants entered into a fraudulent transfer in violation of NRS 112.190. Specifically, by John Whitney directing the transfer of the $100,000 to the Subsidiaries, Itronics, Inc., Whitney and the Subsidiaries used this transfer, and "operation and payroll" needs as a vehicle to transfer Itronics, Inc.'s cash to its Subsidiaries without receiving a reasonably equivalent value in exchange for the transfer and Itronics, Inc. allegedly became insolvent as a result of the transfer.

80. Plaintiffs have reason to believe, and therefore allege, that Itronics Inc. has made additional fraudulent transfers to its Subsidiaries and/or to DOES 1-10 which Plaintiffs have yet to discover.

81. Because the transfer of the Itronics, Inc.' property was fraudulent, it must be avoided pursuant to NRS 112.210(1)(a) so that the assets transferred to the Subsidiaries and Whitney must be considered assets belonging to Itronics, Inc. and subject to Plaintiff's Judgment against them.

82. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law, they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

### SECOND CLAIM FOR RELIEF

**(Avoidance of Transfer pursuant to NRS 112.210(1)(a) – All Defendants)**

83. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as if fully set forth here.

84. Pursuant to NRS 112.210(1)(a), a creditor may obtain avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim.

85. By having the $35,000 cash transferred from Itronics to its Subsidiaries, Defendants have entered into a fraudulent transfer in violation of NRS 112.180.

86. Specifically, by transferring the $35,000 from Itronics, Inc. to its Subsidiaries, Itronics, Inc. used the Subsidiaries as a vehicle to transfer Itronics, Inc. assets with actual intent to hinder, delay, or defraud Plaintiffs, and without receiving a reasonably equivalent value in exchange.

///

87. Evidence of Itronics Inc.'s actual intent to hinder, delay, or defraud Plaintiffs includes, but is not limited to: testimony by Horsley that Itronics, Inc. intentionally keeps its bank account low since this judgment was entered and instead makes all transactions through, and holds all assets in the name of, its Subsidiaries; the Subsidiaries and John Whitney being an insider of Itronics, Inc., as defined in NRS 112.150(7)(a)(2); the Itronics, Inc.'s retaining possession or control of the property after the transfer; Itronics Inc. already being sued by Plaintiffs and having judgment entered against them at the time of the transfer; the transfer being of substantially all of Itronics, Inc.'s cash assets; on information and belief, Itronics, Inc. not receiving consideration from the Subsidiaries or John Whitney that was a reasonably equivalent value to the value of the assets transferred; and Itronics, Inc. being left allegedly insolvent after the transfer was made.

88. By having the $35,000 transferred to its Subsidiaries rather than to Plaintiffs to satisfy the Judgment, Defendants entered into a fraudulent transfer in violation of NRS 112.190. Specifically, by John Whitney directing the transfer of the $100,000 to the Subsidiaries, Itronics, Inc., Whitney and the Subsidiaries used this transfer, and "operation and payroll" needs as a vehicle to transfer Itronics, Inc.'s cash to its Subsidiaries without receiving a reasonably equivalent value in exchange for the transfer and Itronics, Inc. allegedly became insolvent as a result of the transfer.

89. Plaintiffs have reason to believe, and therefore allege, that Itronics Inc. has made additional fraudulent transfers to its Subsidiaries and/or to DOES 1-10 which Plaintiffs have yet to discover.

90. Because the transfer of Itronics, Inc.'s property was fraudulent, it must be avoided pursuant to NRS 112.210(1)(a) so that the assets transferred to the Subsidiaries and Whitney must be considered assets belonging to Itronics, Inc. and subject to Plaintiff's judgment against them.

91. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law, they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

///

///

## THIRD CLAIM FOR RELIEF

**(Attachment or Garnishment pursuant to NRS 112.210(1)(b) – All Defendants)**

92. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as if fully set forth here.

93. Pursuant to NRS 112.210(1)(b), Plaintiffs, as creditors, may obtain an attachment or garnishment against the asset transferred or other property of the transferee pursuant to NRS 31.010 to 31.460, inclusive.

94. Because Itronics, Inc. fraudulently transferred at least $135,000 to its Subsidiaries, Plaintiffs may obtain an attachment or garnishment of the Defendant Subsidiaries' cash or other property.

95. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law, they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

## FOURTH CLAIM FOR RELIEF

**(Injunction and Receiver pursuant to NRS 112.210(1)(c) – All Defendants)**

96. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as if fully set forth here.

97. Pursuant to Pursuant to NRS 112.210(1)(c), Plaintiffs, as creditors, may obtain: (1) [a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property; (2) [a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee; or (3) [a]ny other relief the circumstances may require.

98. Because Itronics, Inc. fraudulently transferred at least $135,000 to its Subsidiaries, Plaintiffs should obtain an injunction against further disposition of the $100,000 and $35,000, or any of Defendants' other property, and appointment of a receiver to take charge of Defendants' cash or other property.

99. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law,

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-12-

they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

### FIFTH CLAIM FOR RELIEF

**(Judgment Against all Defendants pursuant to NRS 112.220(2) – All Defendants)**

100. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as if fully set forth here.

101. Pursuant to NRS 112.220(2), to the extent a transfer is voidable in an action by a creditor under NRS 112.210(1)(a), the creditor may recover judgment against the transferee for either the value of the transferred property or the amount necessary to satisfy the creditor's claim, whichever is less.

102. The transfer of Itronics, Inc.'s property, specifically the $100,000 and $35,000 bank transfers, were fraudulent for the reasons outlined in this Complaint.

103. The transfer of the Itronics, Inc.'s property, specifically the $100,000 and $35,000 bank transfers, is voidable pursuant to NRS 112.210(1)(a).

104. Plaintiffs have reason to believe, and therefore allege, that Itronics Inc. has made additional fraudulent transfers to its Subsidiaries and/or to DOES 1-10 which Plaintiffs have yet to discover.

105. Accordingly, Plaintiffs are entitled to a judgment against the Defendants pursuant to NRS 112.220(2) for either the value of the transferred property or the amount necessary to satisfy its claim against Itronics, Inc., whichever is less.

106. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law, they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

### SIXTH CLAIM FOR RELIEF

**(Alter Ego- Against Defendant-John W. Whitney and the Defendant Subsidiaries)**

107. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509
(775) 829-1222

-13-

108. John Whitney and the Subsidiaries are the alter egos of Itronics, Inc. John Whitney individually and the Subsidiaries corporate structure must be pierced to allow Plaintiffs to collect their judgment against the Itronics, Inc. from John Whitney's and the Subsidiaries' assets.

109. John Whitney and the Subsidiaries completely govern Itronics, Inc. and control its activities and provide all payroll and operations and pay its expenses while Itronics Inc. remains merely a holding company.

110. There is such a unity of interest and ownership between Itronics, Inc., John Whitney and the Subsidiaries, that they are inseparable from one another, and Itronics, Inc. has no apparent independent business operation, instead existing solely for the purpose of conducting the business of Whitney and the Subsidiaries as a holding company.

111. John Whitney and the Subsidiaries own substantially all of Itronics, Inc.'s significant assets, including real property, intellectual property and they hold Itronics Inc.'s cash in their bank accounts.

112. Adherence to the fiction of John Whitney and the Subsidiaries being a separate entity from Itronics, Inc. would sanction a fraud and promote an injustice. This is due in part to Itronics, Inc.'s actions in transferring substantially all of their assets to John Whitney and the Subsidiaries in an effort to shield them from Itronics, Inc creditors.

113. Furthermore, the financial structure of Itronics, Inc. is only a sham and has caused an injustice, as Itronics, Inc has transferred substantially all assets to John Whitney and the Subsidiaries in an attempt to shield them from their creditors.

114. For these reasons, Plaintiffs requests a finding by this Court that John Whitney and the Subsidiaries are the alter egos of Itronics, Inc.

115. By reason of Defendants' conduct, the Plaintiffs have been compelled to retain the services of an attorney and in accordance with the terms of the Notes and pursuant to Nevada law, they are entitled to recover the reasonable amount of their attorneys' fees and costs expended in the prosecution of this matter.

///

///

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

-14-

## SEVENTH CLAIM FOR RELIEF

**(Declaratory Relief)**

116. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

117. An actual controversy has arisen between the parties concerning their respective rights and obligations pursuant to the Judgment and Nevada law.

118. Plaintiffs are entitled to judicial determination of the parties' respective rights and duties as related to the Judgment and Nevada law.

119. A judicial declaration is necessary and proper at this time under the circumstances in order that the parties may determine their rights and duties.

THEREFORE, Plaintiffs pray for judgment as follows:

1. Avoidance of the fraudulent transfers in the amount of at least $100,000 and $35,000.
2. Attachment and garnishment against Defendants' property;
3. An injunction and appointment of receiver;
4. A judgment against all Defendants in the full amount of the judgment.
5. A finding by the Court that Whitney and the Subsidiaries are the alter egos of Itronics, Inc.
6. For a declaration of the parties' rights and obligations;
7. An award of interest, costs, and attorneys' fees;
8. For a jury trial; and
9. Such relief as the Court deems proper.

DATED this 31th day of January, 2024.

GUNDERSON LAW FIRM

    */s/ Austin Sweet*
Austin K. Sweet, Esq.
Nevada State Bar No. 11725
*Attorney for Plaintiffs*

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA  89509
(775) 829-1222

-15-