UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HARRY GINGOLD, *et. al.*, | Case No. 3:24-cv-00053-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| ITRONICS, INC., *et. al.*, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiffs Harry and Monique Gingold and Nahal Kedumim, LLC sued Defendant Itronics, Inc., its subsidiaries, and John W. Whitney alleging fraudulent transfer claims arising from the movement of assets to avoid satisfaction of a judgment. (ECF No. 1 ("Complaint").) Now, before the Court are the cross-motions (collectively "the Motions") for summary judgment by Plaintiffs (ECF No. 19 ("Plaintiffs' Motion"))[1] and Defendants (ECF No. 20 (Itronics' Motion))[2]. For the reasons discussed below, the Court will deny the Motions, as genuine material factual disputes exist as to the fraudulent conveyance and "alter ego" liability claims.

**II.    RELEVANT BACKGROUND[3]**

This action arises from a dispute over the enforcement of a judgment ("the Judgment")[4] obtained by Plaintiffs Harry and Monique Gingold and Nahal Kedumim,

---

[1] Defendants responded (ECF No. 22), and Plaintiffs replied (ECF No. 23).

[2] Plaintiffs responded (ECF No. 21), and Defendants replied (ECF No. 24).

[3] The following facts are undisputed unless otherwise noted.

[4] On February 17, 2022, a judgment ("the Judgment") in the amount of $99,759.06 (which includes the principal judgment and subsequent orders granting attorney's fees and costs plus interest) was entered in Plaintiffs' favor against Itronics and its successors and assigns in an underlying action in this district for breach of contract and fiduciary duties relating to stock purchases. (*See* Case No. 3:19-cv-00532-

LLC against Defendant Itronics, Inc. for the alleged fraudulent transfer of funds and assets to avoid satisfaction of a debt. Plaintiffs' Complaint is based on the intercompany transfers of $100,000 and $35,000 (collectively "the Funds")[5] from Itronics to its subsidiaries.[6] (ECF No. 1 at 5-6.) Itronics is a publicly traded Texas corporation[7] headquartered in Reno, Nevada that claims insolvency and inability to pay the Judgment. (*Id.* at 2, 8; *see also* ECF No. 20 at 3, 6.) To date, Itronics has made no payments in full or partial satisfaction of the Judgment. (ECF No. 1 at 4, 8.)

Itronics exercises unified control and operations as a parent entity with a controlling interest in the following Nevada-based subsidiaries[8]: Whitney & Whitney, Inc., Itronics Metallurgical, Inc. ("IMI"), American Hydromet, and Auric Gold and Silver. (ECF No. 1 at 2-4; ECF No. 19-2 at 10.) All subsidiaries report to President John W. Whitney, a Nevada resident, who exercises complete control. (ECF No. 1 at 2, 5; ECF No. 19-2 at 14.) Although Itronics has no direct employees, its designee and controller,

---

MMD-CLB) (ECF No. 1 at 4, 8; *see also* ECF No. 19 at 2.) The underlying action sought to recover debts owed on three promissory notes ("the Notes"). (ECF No. 1 at 8.) The Court notes that, at the time of filing, the amount actually due was $101,301.80. (ECF No. 1 at 2.) On January 31, 2024, Plaintiffs filed the Complaint (ECF No. 1) initiating this present matter.

[5]On June 22, 2023, Itronics received a $100,000 investment from Nicholas Kreifels ("Nick"), which, on the same day, it electronically transferred to Whitney & Whitney. (ECF No. 19-5 at 92; ECF No. 19-6 at 126; ECF No. 20-1 at 7; ECF No. 20-3 at 7, 9; ECF No. 20-4.) On September 15, 2023, Itronics received a $35,000 investment from Sphere Management, LLC ("Sphere"), which, on the same day, it also transferred to its subsidiaries (i.e., Whitney & Whitney and American Hydromet) for "payroll" purposes. (ECF No. 19-5 at 106; ECF No. 19-6 at 158; ECF No. 20-1 at 8; ECF No. 20-2 at 21-22.)

[6]The parties dispute the motive behind the transfer of the Funds. Plaintiffs argue that Itronics fraudulently transferred the Funds in an "express, deliberate effort" to avoid the Gingolds' satisfaction of their Judgment. (ECF No. 19 at 2; ECF No. 1 at 6.) Defendants counter that, according to Michael Horsley's sworn deposition testimony, the Funds were transferred to prevent creditors from seizing them and to enable Itronics to cover the operating expenses of its subsidiaries. (ECF No. 20-1 at 28; *see also* ECF No. 20 at 3.)

[7]While Itronics is a publicly traded company, controller and designee, Michael Horsley, confirmed in sworn deposition testimony that Itronics has not made its SEC filings since September 2008. (ECF No. 1 at 5; ECF No. 19-2 at 8-9; ECF 20-1 at 5.)

[8]According to Horsley, Whitney & Whitney and IMI are the "primary operating subsidiaries." (ECF No. 19-2 at 10.)

Michael Horsley, performs essential administrative and financial functions, including preparing financial statements, managing accounts payable, issuing checks, and overseeing payroll. (ECF No. 1 at 4.)

Plaintiffs initiated judgment collection efforts by filing a Writ of Execution on May 1, 2023 and by noticing a debtor's exam of Itronics through the deposition of Horsley. (ECF No. 1 at 2, 4; *see also* ECF No. 19-2.) As noted above, Itronics failed to make payments satisfying the Judgment, and based on Horsley's sworn deposition testimony, Plaintiffs assert that Itronics deliberately withheld funds by "hid[ing] its assets, keep[ing] its bank account low, and channel[ing] all cash and operations through its Subsidiaries." (ECF No. 1 at 4, 8.) Itronics objects, countering that the transferred funds were "used to pay the operating expenses for the Defendant Subsidiaries." (ECF No. 20 at 3; ECF No. 20-1 at 7.)

Plaintiffs subsequently initiated this action. Plaintiffs bring seven claims against all Defendants: (1)[9] avoidance of the fraudulent transfers to subsidiaries with intent to hinder, delay, or defraud in violation of NRS § 112.180 (ECF No. 1 at 9-11); (3) attachment and/or garnishment against Defendants' property (*id.* at 12); (4) injunctive relief to prevent further disposition of Defendants' property and appointment of a receiver to manage the transferred funds and other assets (*id.* at 12-13); (5) judgment against all Defendants in the full amount[10] of the Judgment (*id.* at 13); (6) a finding of

---

[9] Claims 1 and 2 assert fraudulent transfer of funds but as to different cash amounts. Claim 1 corresponds to the transfer of $100,000 in cash assets (ECF No. 1 at 9-10), while Claim 2 relates to the transfer of $35,000 (*Id.* at 10-11).

[10] Plaintiffs seek judgment against all Defendants under NRS § 112.220(2) for either: (1) the value of the fraudulently transferred property; or (2) the amount necessary to satisfy the Judgment, whichever is less. (ECF No. 1 at 13.)

"alter ego liability"[11] as to John Whitney and the subsidiaries (*id.* at 14); and (7) declaratory relief[12] (*id.* at 15).

## III.     DISCUSSION

Plaintiffs move for summary judgment as to all seven of their above claims. (ECF No. 19.) Itronics, meanwhile, moves for summary judgment in its favor as to each of those claims. (ECF No. 20.) To avoid repetition, the Court will address the Motions as they pertain to each claim while bearing in mind the parties' burdens on summary judgment. *See* Fed. R. Civ. P. 56 (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) ("The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.") (citation omitted).

The Court first evaluates the Motions with respect to the fraudulent conveyance claims (i.e., claims 1, 2) before turning to the alter ego liability claim (i.e., claim 6) and finds that genuine disputes of material fact preclude summary judgment for either party on these claims.[13]

///
///
///
///
///

---

[11]Plaintiffs seek to "pierce" the corporate veil to collect their Judgment from John Whitney and the subsidiaries, who are alleged to be "alter egos" of Itronics, used to shield assets and defraud creditors. (ECF No. 1 at 14.)

[12]Plaintiffs seek declaratory relief recognizing the parties' rights and obligations under the Judgment and the enforceability of Plaintiffs' claims under Nevada law (ECF No. 1 at 15).

[13]The Court need not address the remaining arguments, which, in effect, operate as remedies for claims 1, 2, and 6.

**A. Claims 1 and 2 – Avoidance of Fraudulent Transfer Claims Under NRS § 112.210(1)(a)**

In their first two claims, Plaintiffs urge the Court to avoid the alleged fraudulent transfers under NRS § 112.210(1)(a), arguing there are sufficient indicia of "actual intent" to hinder, delay, or defraud collection efforts. (ECF No. 19 at 10-12.) As further discussed below, the Court finds a genuine factual dispute exists, which warrants denial of summary judgment on the fraudulent conveyance claims.

Before addressing the alleged fraudulent transfer claims, the Court must first resolve a threshold choice-of-law question that Defendants raised. Itronics argues that Plaintiffs' claims are "defective" and fail to state a claim upon which relief can be granted because they are brought under Nevada law. (ECF No. 20 at 6-7; ECF No. 22 at 13-14.) Specifically, Defendants contend that Texas law and the "internal affairs doctrine" should apply instead, as the claims "arise out of" transfers made by the officers and directors of Itronics—a Texas corporation.[14] (*Id.*; *see also* ECF No. 24 at 3-6.) The Court agrees with Plaintiffs (ECF No. 23 at 8; ECF No. 21 at 2) that, regardless of the applicable state law, the underlying substantive law is identical because both Nevada and Texas have adopted the Uniform Fraudulent Transfer Act (UFTA). *See* NRS Ch. 112 (§§ 112.140-112.250); Tex. Bus. & Com. Code Ch. 24 (§§ 24.001-24.013). Since the choice-of-law rules of the forum state (here, Nevada) apply to federal courts sitting in diversity to "determine the controlling substantive law," *see Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)), the Court will analyze the fraudulent transfer claims under Nevada law.[15]

---

[14] Under the internal affairs doctrine, only one state should have the authority to regulate a corporation's internal affairs. *See* Restatement Second of Conflict of Laws § 302 (Am. L. Inst. 1971); *see also see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 78 (1987).

[15] Under the "most significant relationship test" that Nevada has adopted, the law of the state with the "most significant relationship" to the occurrence and the parties should be applied to choice-of-law issues in tort actions. *See Gen. Motors Corp. v.*

Under NRS § 112.210(1)(a), in an action for relief against a transfer, a "creditor may obtain [a]voidance of a transfer or obligation to the extent necessary to satisfy the creditor's claim." Under NRS § 112.180(1)(a), a transfer made by a debtor is "fraudulent as to a creditor…if the debtor made the transfer or incurred the obligation: [w]ith actual intent[16] to hinder, delay or defraud any creditor of the debtor." Plaintiffs assert that most of the requirements for determining actual intent under NRS § 112.180(1)(a) are met. (ECF No. 19 at 11-12.) In their Complaint and Motion, Plaintiffs allege a series of factual circumstances detailing Defendants' attempts to defraud collection efforts: "money is invested into Itronics, Inc.," which is "almost immediately transferred to one of several insiders" in order to "ensure the Gingolds cannot execute upon it," and "each transfer was of substantially all of Itronics, Inc.'s assets," suggesting that Defendant "deliberately kept its account near $0.00 to hinder [] collection efforts." (ECF No. 1 at 9-11; ECF No. 19 at 11-12; *see also* ECF No. 23 at 9.)

///

///

///

---

*Eighth Judicial Dist. Ct.*, 134 P.3d 111, 116-17 (Nev. 2006). Moreover, fraudulent transfer actions fall under § 148 of the Restatement (Second) of Conflict of Laws, which, likewise, requires applying the local law of the state "selected on the basis of the stated contacts." Here, Nevada law applies, in part, because Plaintiffs obtained their initial judgment under Nevada law, Defendants are headquartered in Nevada, and the transfers occurred in Nevada. (ECF No. 21 at 5.)

[16]To determine "actual intent" under NRS § 112.180(1)(a), a court may consider the following factors: "(a) [t]he transfer or obligation was to an insider; (b) [t]he debtor retained possession or control of the property transferred after the transfer; (c) [t]he transfer or obligation was disclosed or concealed; (d) [b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) [t]he transfer was of substantially all the debtor's assets; (f) [t]he debtor absconded; (g) [t]he debtor removed or concealed assets; (h) [t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) [t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) [t]he transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) [t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." NRS § 112.180(2).

Disputing allegations of bad faith and citing NRS § 112.220(1)[17]—which protects transfers made in good faith—Itronics responds that, "Defendants took the transfers in good faith and [] received reasonably equivalent value." (ECF No. 22 at 17.) Itronics then offers several reasons for its intent to transfer, including a desire to "keep [subsidiaries] operational in the hopes of generating profits." (*Id.* at 18.) Notwithstanding, the Court finds that determining whether the transfers were made for a benevolent—as opposed to fraudulent—purpose requires a fact-intensive assessment of "intent," and, here, neither party has met their burden[18], making summary judgment improper.[19] Accordingly, the Court denies the Motions as to the two claims involving fraudulent transfers.

## B. Claim 6 – Alter Ego Liability

In their sixth claim, Plaintiffs seek summary judgment based on their contention that all Defendants are the "alter egos" of Itronics, John Whitney, and each other and argue that Defendants improperly disregarded corporate formalities. (ECF No. 19 at 14-16.) Defendants object, asserting the claim is precluded both under Texas law and the doctrine of claim preclusion.[20] (ECF No. 22 at 19-21.) Consistent with its above analysis, the Court finds that genuine material factual disputes exist regarding this claim, thereby barring summary judgment.

---

[17]Under NRS § 112.220(1), "[a] transfer or obligation is not voidable under [] NRS 112.180 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

[18]Summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact.[18] *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

[19]Defendants further argue in the alternative that the Court should dismiss Plaintiffs' fraudulent conveyance claims on public policy grounds. (ECF No. 22 at 18.) The Court finds this argument unpersuasive and, accordingly, rejects it.

[20]The Court need not address these arguments, as it has already addressed the Texas law argument above, and because it finds the claim preclusion argument unpersuasive.

To prevail on an alter ego liability claim, a plaintiff must show by a preponderance of the evidence: "(1) [t]he corporation [is] influenced and governed by the person asserted to be its alter ego. (2) [t]here [is] such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts [are] such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *Frank McCleary Cattle Co. v. Sewell,* 317 P.2d 957, 959 (Nev. 1957) (citing *Minifie v. Rowley*, 202 P. 673 (Cal. 1921)); *see also Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008). The Nevada Supreme Court has clarified that unity of interest or ownership may be shown through "the commingling of funds, shared operations, shared headquarters, shared bank accounts, or failure to observe corporate formalities." *See Clarke v. Serv. Emps. Int'l Union*, 495 P.3d 462, 466 (Nev. 2021) (citations omitted).

Here, Plaintiffs assert that Itronics is unduly influenced by its President, John Whitney, who "unilaterally controls" the parent company and its subsidiaries. (ECF No. 19 at 15.) Plaintiffs argue that, under Whitney's exclusive control and management, Itronics functions as a "single business entity," where money transfers are made for "self-serving" and "illegitimate" business purposes. (*Id.* at 15-16.) As discussed above, the Court finds that reaching such a determination requires a fact-intensive assessment better suited for a factfinder, making summary judgment improper.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' motion for summary judgment (ECF No. 19) is denied.

It is further ordered that Defendant's motion for summary judgment (ECF No. 20) is denied.

It is further ordered that this case is referred to the Magistrate Judge to conduct a settlement conference. The proposed joint pretrial order will be due 30 days from the settlement conference, assuming settlement is not effectuated.

DATED THIS 19th Day of September 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE